1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

RICHARD A. RIJOS,                                CASE NO. CV-F-05-0659 LJO

              Plaintiff,          **MEMORANDUM DECISION AND ORDER
                                   ON PLAINTIFF'S APPEAL FROM
       vs.                        ADMINISTRATIVE DECISION** (Doc. 15)

JO ANNE BARNART,
Commissioner of Social Security,

              Defendant.
_____/

       Plaintiff Richard A. Rijos ("claimant") seeks judicial review of an administrative decision denying his claim for Disability Insurance Benefits under the Social Security Act ("Act"). Pursuant to 28 U.S.C. § 636( c) and Fed.R.Civ.P. 73, the parties consented to proceed before a United States Magistrate Judge, and by a January 23, 2006 order, this action was assigned to United States Magistrate Judge Lawrence J. O'Neill for all further proceedings. Pending before the Court is claimant's appeal from the administrative decision of the Commissioner of Social Security ("Commissioner").

       Claimant filed his complaint on May 20, 2005 and his opening brief on March 3, 2006. The Commissioner filed her opposition to the appeal on April 5, 2006. Claimant filed a reply brief on April 14, 2006.

## BACKGROUND

### Administrative Proceedings

       Claimant filed an application for Disability Insurance Benefits under the Social Security Act on

1

1   in December 2002. (Administrative Record "AR" 54-56.) He alleges a disability onset of May 19, 2002

2   due to dislocated and chipped discs at C5 & 6; shoulder tear and related pain. (AR 60.)  Claimant's

3   application for benefits was denied and denied upon reconsideration. (AR 41-44, 46-49.)  Claimant's

4   application was further denied by an Administrative Law Judge ("ALJ") in a decision issued on May 27,

5   2004. (AR 26-32.)  The Appeals Council denied review.  Claimant filed this action for judicial review

6   pursuant to 42 U.S.C. § 405(g).

7   **Claimant's Work Experience**

8   Claimant was born on April 8, 1959 and completed a high school equivalency. (AR 287.)  His

9   past relevant work was as an iron worker/construction work. (AR 287.)

10   **Medical History**

11   The pertinent medical history is summarized as follows.

12   On May 19, 2002, claimant reported to the emergency room of Little Company of Mary Hospital

13   with complaints of right neck, shoulder and arm pain. (AR 91-92.) Claimant was given pain medication

14   and diagnosed with a probable herniated disc. (AR 92.)  He was told to rest and ice his neck. (AR 97.)

15   A magnetic resonance imaging (MRI) scan of claimant's cervical spine taken on May 21, 2002

16   revealed disc bulges at C5-6 and C6-7 with mild to moderate central canal narrowing and moderate to

17   severe encroachment on the neural foramen. (AR 102-03.)  The MRI also revealed disc degeneration

18   from C5-T1, and a disc fragment behind the C6 vertebra.  On May 10, 2002, an electromyelogram

19   (EMG), nerve conduction study of claimant's upper extremities was normal. (AR104-06).

20   Claimant was referred to Fabian Proanao, M.D., at the Pain & Rehabilitation Medical Group and

21   was evaluated on May 22, 2002. (AR 126-128.)  Physicial exam revealed tenderness over the posterior

22   cervical spine and into the right paraspinous region.  Cervical compression test was positive on the right

23   side producing radicular pain in his right arm. (AR 127.)  Claimant was assessed with right sided C5-C6

24   disc bulge causing right C5-C6 foraminal stenosis; persistent right cervical radiculitis. (AR 127.)  His

25   plan was for claimant to receive epidural injections at the C6 level. (AR 127.)

26   On June 18, 2002, physical therapy evaluation indicated that claimant would participate in a

27   four-week physical therapy session for severe and chronic cervical spine and right upper extremity pain.

28   (AR 122-125.)

1    On June 12, 2002 and June 5, 2002, claimant was given epidural injections.  (AR 218, 222.)

2    A magnetic resonance arthrogram of claimant's right shoulder on September 17, 2002 showed

3    mild to moderate hypertrophic changes of the acromioclavicular (AC) joint encroaching on the

4    underlying muscle and tendon, and a likely congenital variation of the labium. (AR  228-29, 232.)

5    Cervical spine MRI on May 21, 2003 showed large bony osteophytes at C5-C6 and C6-C7 with severe

6    right-sided foraminal narrowing at both levels, moderate left sided foraminal narrowing at C6-C7, and

7    moderate left sided narrowing at C5-C6; and an apparent disk extrusion on the right between C5 and C6.

8    (AR 231.)

9    Robert W. Hunt, M.D., was hired as claimant's treating orthopedic surgeon in his workers'

10   compensation claim. Dr. Hunt initially evaluated claimant on August 2, 2002. (AR 162-74.) Claimant

11   complained of neck and right shoulder pain radiating into his arm and fingertips, and headaches. (AR

12   163).  On examination, claimant touched the chin to shoulders bilaterally, and forward flexed the

13   cervical spine to touch the chin to the anterior chest, with pain.  (AR 167.)  Cervical spine X-rays on

14   August 2, 2002 revealed narrowing of the C5-C6 and C6-C7 with calcification of the longitudinal

15   ligament and narrowing of the neural foramina at C6-C7.  (AR 170.)  Right shoulder x-ray revealed

16   narrowing on the outlet view and left shoulder x-ray revealed cystic lesion over the superior margin of

17   the acromion. (AR 170.) Dr. Hunt diagnosed cervicothoracic strain, with secondary radiculopathy to

18   the right upper extremity; right shoulder strain, rule out rotator cuff tear.  (AR 171.)  Dr. Hunt opined

19   the claimant would benefit from a short period of vigorous orthopaedic treatment for 14 weeks;

20   supervised program of physical therapy, 3 times a week for 10 weeks.  (AR 171.)  He prescribed

21   medication, anti inflammatory ointment, and other pain treatment. (AR 171.) Dr. Hunt placed claimant

22   on temporary total disability, and estimated he would become permanent and stationary within 6 months.

23   (AR 172.)

24   On October 28, 2002, claimant was evaluated by Timothy Hunt, M.D. for a surgical consultation.

25   (AR 147.)  Claimant complained of pain in his right shoulder.  (AR 148.)  Dr. Hunt's impression was

26   right shoulder acromioclavicular joint arthrosis with probable SLAP tear versus anterior labral tear. (AR

27   153.)

28   On November 18, 2002, claimant had an orthopaedic spine surgical consultation with Gerald

1  Alexander, M.D.  Dr. Alexander provided the diagnoses of cervical disk herniation at levels C5-6 and

2  C6-7, and right cervical radiculopathy. Dr. Alexander remarked that cervical spine surgery was

3  warranted based on diagnostic study findings, objective physical findings, and claimant's failure to

4  respond to "reasonable" conservative management. (AR 138-145.)   He recommended a two-level

5  cervical discectomy and fusion at C5-6 and C6-7.  (AR 143).

6       On January 14, 2003, Myung Ra Sohn, M.D., state agency physician completed the Physical

7  Residual Functional Capacity Assessment form.  (AR 178-185.)  Claimant was assessed as capable of

8  lifting 20 pounds occasionally and 10 pounds frequently, sit/stand/walk 6 hours out of 8, no limitations

9  in pushing or pulling, no postural limitations; limited in reaching overhead with the arms.

10      After claimant's last visit with Dr. Hunt on November 25, 2002, Dr. Hunt reported to the

11  Workers' Compensation on May 8, 2003 that claimant was permanent and stationary under Workers'

12  Compensation. (AR 233.)  Dr. Hunt assessed restrictions on work of no prolonged maintenance of the

13  head/neck in a fixed position, no repetitive bending, twisting, or turning of the head or neck, no heavy

14  work for the right shoulder, no repetitive work at or above shoulder level. (AR 235.)

15      In claimant's Workers' Compensation case, claimant was seen by an Agreed Medical Examiner,

16  Richard M. Siebold, M.D. an orthopedist, on April 17, 2003.  (AR 187-208.)  Claimant reported injury

17  to his back due to a continuous trauma from May 18, 2001 to May 18, 2002.  (AR 187.)  On May 18,

18  2001, he felt numbness and pain in his right hand, forearm and right shoulder.  He reported to the

19  emergency room the next day.  Claimant reported that he can no longer lift, push, pull, climb or work

20  above the shoulder level or bend at the neck.  (AR 190.)  Claimant had limitation in the range of motion

21  of the cervical spine with complaints of pain in the right and left sides of the neck.   (AR 205.)

22  Objectively, there was disc herniation at C5-C6 on the right, and degenerative change at C5-C6 and C6-

23  C7 with disc protrusions at both levels; there was bilateral neuroforaminal encroachment at both levels.

24   (AR 205.)  His grip strength on the right was 63% of predicted normal and on the left 85%. Dr. Siebold

25  assessed work restrictions of no repetitive motion, no prolonged positioning, and no work at or above

26  shoulder level of the bilateral upper extremities; no ladder or pole climbing.  (AR 205.)

27      On July 14, 2003, claimant was orthopedically re-evaluated by Gerald J. Alexander, M.D. for

28  a pre-operative appointment for anterior cervical fusion at C5-C6 and C6-C7.  (AR 246.)  Cervical

1   surgery was performed on July 21, 2003 by Dr. Alexander.  (AR 242-245.) Dr. Alexander examined

2   claimant on August 21, 2003 post operative. (AR 239-41). The wound was healing well.  X-rays taken

3   at that time revealed appropriate placement of the surgical hardware and interbody grafts.  (AR 240.) Dr.

4   Alexander recommended for claimant to wear a cervical collar for another four weeks.  (AR 240.)  He

5   began physical therapy.

6          On April 22, 2003, a state agency physician completed the Physicial Residual Functional

7   Capacity Assessment form.  (AR 209-216.)  Claimant was assessed with the ability to lift 20 pounds

8   occasionally and 10 pounds frequently, stand/sit/walk 6 hours out of 8, no postural limitations, limited

9   in overhead reaching.

10         In a February 2, 2004 report to the State Compensation Insurance Fund, Dr. Hunt indicated that

11  claimant was permanent and stationary since his examination of December 17, 2003. (AR 264-77.)

12  Claimant complained of continuous pain in the neck associated with headaches, numbness and tingling

13  of the hands and fingers, and bilateral shoulder pain.  Dr. Hunt's impression was status post-operative

14  anterior cervical discectomy/fusion with secondary radiculopathy to the right upper extremity; bilateral

15  shoulder strain and thoracolumbosacral strain. (AR 273.) Dr. Hunt assessed the same limitations he had

16  assessed in October 2002, and included an additional limitation  from weight bearing or sitting for more

17  than sixty minutes at a time without the opportunity to change positions.  (AR 275.)

18                                          **Hearing Testimony**

19         Claimant testified that he had to stop working as an iron worker from pain in his arm.  (AR 288.)

20  He cannot work because the pain in his neck, shoulders, knees and he has lost feeling in fingers of his

21  right hand. (AR 289.)  He had surgery on the neck, but it did not help the numbness.  (AR 290.)  The

22  surgery helped the pain, but now he has headaches.  (AR 290.)  Some medication will help and lying

23  down helps.  (AR 290.)  He will lie down 45 minutes to a couple of hours.  (AR 291.)  He has problems

24  reaching with both arms.  (AR 291.)  The medication sometimes makes him nauseated, dizzy, or sleepy.

25  (AR 292.)  Even if he stays stationary, he is in pain; rotating his neck causes pain.  (AR 292.)  He also

26  has neck problems from holding his neck in a single position.  (AR 293.)

27         Vocational Expert ("VE") Sandra Schneider testified.  Claimant's past relevant work was heavy

28  work. (AR 294.) The ALJ gave the hypothetical that a person retains a full range of light work reduced

                                                5

by not engaging in overhead reaching with the right upper extremity.  (AR 294.)  The VE testified there would be unskilled work a person could perform such as a small product assembler position and counter clerk positions.  (AR 295.)  In another hypothetical, the ALJ added the restrictions that the person could not engage in repetitive motions or prolonged positioning, could not work above shoulder level and could not work from ladders and poles.  The VE testified that the person could perform the same jobs as in the previous hypothetical.  (AR 295.)  In a third hypothetical, overhead reaching was limited to occasionally with either arms, but not frequently.  (AR 295.)  The VE testified that the person could perform the same jobs.  (AR 295.)  In a fourth hypothetical, the ALJ added that the person could not maintain his head or neck in a fixed position, and no ability for repetitive bending, twisting or turning of the head and neck.  (AR 296.)  The VE testified that the person could not do the past relevant work and could not any other job in the light or sedentary exertional level. (AR 296.)

### ALJ Findings

In his May 27, 2004, decision, the ALJ characterized the "primary issue" before him as whether claimant was disabled.  (AR 26.)  In determining claimant was not disabled and not eligible for disability benefits, the ALJ made the following findings (AR 31-32):

1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in section 216(I) of the Social Security Act and is insured for the benefits through the date of this decision.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimant's cervicothoracic strain, with secondary radiculopathy to the right upper extremity, status post 2-level anterior cervical discectomy and fusion at C5-7, and right shoulder strain are considered "severe" based on the requirements in the Regulations. 20 CFR §404.1520( c).

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. The ALJ finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.

6.   The claimant has the residual functional capacity to perform light work with no repetitive neck motion, prolonged positioning of the neck, work at or above the shoulder level of the bilateral upper extremities or ladder or pole climbing.

7.   The claimant is unable to perform any of his past relevant work. 20 CFR §404.1565.

8.   The claimant is a "younger individual between the ages of 45 and 49." 20 CFR §404.1563.

9.   The claimant has a "high school equivalent education." 20 CFR §404.1564.

10.  The claimant has no transferable skills from any past relevant work. 20 CFR §404.1568.

11.  The claimant has the residual functional capacity to perform a significant range of light work. 20 CFR §404.1567.

12.  Although the claimant's limitations do not allow him to perform the full range of light work, using Medical-Vocational Rule 202.21 as a framework for decision-making, there are a significant number of jobs in the national economy that he could perform. Examples of such jobs include work as a small products assembler and counter clerk.

13.  The claimant was not under a "disability,' as defined in the Social Security Act, at any time through the date of this decision. 20 CFR §404.1520(g).

## DISCUSSION

### Standard of Review

Congress has provided a limited scope of judicial review of a Commissioner's decision. *See* 42 U.S.C. § 405(g). A court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Sanchez v. Secretary of Health & Human Services*, 812 F.2d 509, 510 (9th Cir. 1987) (two consulting physicians found applicant could perform light work contrary to treating physician's findings). Substantial evidence is "more than a mere scintilla" (*Richardson v. Perales*, 402 U.S. 389, 402 (1971)), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401.

The record as a whole must be considered, weighing both the evidence that supports and detracts

from the Commissioner's conclusion. *Jones,* 760 F.2d at 995. If there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

Thus, this Court reviews the Commissioner's decision pursuant to 42 U.S.C. § 405(g) to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. *Copeland v. Bowen*, 861 F.2d 536, 538 (9th Cir. 1988).

Claimant contends the ALJ's erred as follows: (1) rejecting the treating physician's opinion; (2) finding claimant not fully credible, and (3) assessing claimant as able to perform light work.

## **The Sequential Analysis**

To qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382(a)(3)(A).

To achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation to determine whether a claimant is physically or mentally disabled. 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f). If during any point of this review, it is determined that the claimant is not disabled, the claim is not to be considered further. 20 C.F.R. §§ 404.1520(a) and 416.920(a). The five-step process is summarized as follows:

1.   Determination of whether the claimant is engaged in substantial gainful activity, and if so engaged, the claimant is not presumed disabled and the analysis ends;

2.   If not engaged in substantial gainful activity, determination of whether the claimant has a severe impairment; if the claimant does not, the claimant is not presumed disabled and the analysis ends;

3.   If the claimant has a severe impairment, determination of whether any such severe impairment meets any of the impairments listed in the regulations;[1] if the claimant does

---

[1]   *See* 20 C.F.R. Part 404, Subpt. P, App. 1.

8

1    have such an impairment, the claimant is disabled and the analysis ends;[2]

2    4.    If the claimant's impairment is not listed, determination of whether the impairment

3    prevents the claimant from performing his or her past work;[3] if the impairment does not,

4    the claimant is not presumed disabled and the analysis ends; and

5    5.    If the impairment prevents the claimant from performing his or her past work,

6    determination of whether the claimant can engage in other types of substantial gainful

7    work that exist in the national economy;[4] if the claimant can, the claimant is not disabled

8    and the analysis ends.

9    The claimant has the initial burden of proving the existence of a disability within the meaning

10   of the Act. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). The claimant establishes a prima

11   facie case of disability by showing that a physical or mental impairment prevents him from engaging in

12   his previous occupation. *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§

13   404.1520(f) and 416.920(f).

14   Claimant contends that he is unable to perform even sedentary work on a full time basis.

15   Claimant argues that the ALJ erred in rejecting the limitations imposed by his treating worker's

16   compensation physician, Dr. Hunt.

17   Generally, more weight should be given to the opinion of a treating source than to the opinion

18   of doctors who do not treat the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The Ninth

19   Circuit has held that a treating physician's opinion is generally to be afforded great weight in disability

20   cases because he or she ". . . is employed to cure and has a greater opportunity to know and observe the

21   patient as an individual." *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987); *see also* 20 C.F.R.

22

23   [2]    If a claimant is found to have an impairment which meets or equals one of the listed impairments, a
24   conclusive presumption of disability applies and the claimant is entitled to benefits. *See Marcia v. Sullivan*, 900 F.2d 172,
     174 (9th Cir. 1990) (citing *Williams v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987); *Key v. Heckler*, 754 F.2d 1545, 1548) (9th
25   Cir. 1985.

26   [3]    At this stage of the analysis, the ALJ should consider the demands of the claimant's past work as compared
     with his or her present capacity. *Villa v. Heckler,* 797 F.2d 794, 797 (9th Cir. 1986) (citations omitted); 20 C.F.R. §
27   416.945(a).

28   [4]    At this stage of the analysis, the ALJ should consider the claimant's residual functional capacity and
     vocational factors such as age, education and past work experience. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

1   §§ 404.1527(d) and 416.927(d). However, a treating physician's opinion is not conclusive as to a

2   claimant's physical condition or the ultimate issue of disability and may be disregarded by the ALJ even

3   where it is not contradicted. 20 C.F.R. § 404.1527(e); *Rodriquez v. Bowen*, 876 F.2d 759, 761-762, n.

4   7 (9th Cir. 1989).

5       The Ninth Circuit Court of Appeals has established requirements when an ALJ disregards the

6   treating physician's opinion:

7           "The ALJ may disregard the treating physician's opinion, but only by
            setting forth "specific, legitimate reasons for doing so, and this decision
8           must itself be based on substantial evidence." This burden can be met by
            providing a detailed summary of the facts and conflicting clinical
9           evidence, along with a reasoned interpretation thereof. *Id.* Furthermore,
            the ALJ's reasons for rejecting the doctor's opinion must be "clear and
10          convincing."

11  *Rodriquez,* 876 F.2d at 762. This burden can be met by providing a detailed summary of the facts and

12  conflicting clinical evidence, along with a reasoned interpretation thereof. *Cotton v. Bowen*, 799 F.2d

13  1403, 1408 (9th Cir. 1986); *but see Allen v. Heckler*, 749 F.2d 577, 579-80 (9th Cir.1984) (articulating

14  a narrow exception; where there is a conflict between the findings of the treating and non-treating

15  physicians, and the non-treating physician's opinion is based on a thorough examination and objective

16  clinical tests, findings by the ALJ that the plaintiff is not disabled will be considered supported by

17  substantial evidence).

18      Claimant argues that the ALJ improperly rejected Dr. Hunt's opinion on the sole basis that Dr.

19  Hunt was treating claimant in the Worker's Compensation case. The Commissioner argues that it is the

20  ALJ's responsibility to resolve conflicting testimony, which he did by adopting the examining

21  physician's opinion, and that there is substantial evidence in the Record to support the ALJ's conclusion.

22      Here, the ALJ stated the reasons for rejecting Dr. Hunt's opinion and accepting Dr. Siebold's

23  opinion:

24          "In a highly contested Workers' Compensation litigation, the Agreed
            Medical Examiner [Dr. Siebold] is the most impartial because he/she
25          represents neither the applicant (plaintiff) nor the employer (or its
            insurance carrier). Dr. Siebold, as the Agreed Medical Examiner, was
26          selected by agreement of <u>both</u> sides." (AR 29) (emphasis in original.)

27  The ALJ stated that Dr. Siebold had no bias:

28          "Neither was Dr. Siebold paid by a lien, as with the plaintiff doctors who

1  earn a fee only if their patient wins, such as Dr. Hunt.  The instant case
2  provided us with such an AME assessment.  I give the greatest weight to
   Dr. Siebold's assessment . . ."  (AR 29.)

3

4  The ALJ concluded the Dr. Hunt's bias precludes him from being impartial:

5  "I cannot give any significant weight to Dr. Hunt's assessment at Exhibit
   9F/18 despite the fact that Dr. Hunt was selected as the 'treating doctor'
6  for Workers' Compensation purposes.  As noted above, that means he
   was hired in a lien based system and was hired as the claimant's advocate
   and to assist him in obtaining Worker's Compensation benefits. (AR 29.)
7

8      Here, the ALJ rejected Dr. Hunt's evaluation and opinion on the basis that he was retained as the

9  treating physician in the Worker's Compensation case.  He was rejected for alleged bias because he was

10 "appointed as treating physician."

11     The Ninth Circuit has previously stated that "[t]he purpose for which medical reports are

12 obtained does not provide a legitimate basis for rejecting them." *Lester v. Chater*, 81 F.3d 821, 832 (9th

13 Cir.1996) ((holding that an ALJ may not assume that doctors routinely lie in order to help patients collect

14 disability benefits). The Ninth Circuit, however, has "permitted an ALJ to question a doctor's credibility

15 because ... the doctor's opinion letter had been solicited by the claimant's counsel." *Saelee v. Chater*, 94

16 F.3d 520, 522-23 (9th Cir.1996), *cert. denied*, 519 U.S. 1113 (1997).  In *Saelee*, the solicited report was

17 not supported by objective medical findings. The doctor himself admitted that he could not establish any

18 organic basis for the patient's complaints, the doctor's opinion letter varied from his treatment notes and

19 "was worded ambiguously in an apparent attempt to assist [the claimant] in obtaining social security

20 benefits." 94 F.3d at 523.  As the Ninth Circuit noted, the ALJ cited to the "actual improprieties" in the

21 procured report, in support of the ALJ's finding that "is worded in such a way that it strikes [him] as an

22 effort by the physician to assist a patient even though there is no objective medical basis for the

23 opinion." *Saelee*, 94 F.3d at 523.   *See also Ratto v. Secretary*, 839 F.Supp. 1415, 1426 (D.Or.1993)

24 (While the Secretary "may introduce evidence of actual improprieties," no such evidence exists here.)

25     Claimant argues that the ALJ gave no other reason for rejecting Dr. Hunt's opinion other than

26 his involvement as the treating physician in the Worker's Compensation case. The Ninth Circuit has

27 upheld rejection of a treating physician on bias grounds as long has the ALJ addresses other

28 improprieties in the medical opinion or states other reasons for rejecting the opinion.

11

1  Court cases acknowledge the bias a treating physician may bring to an evaluation.  "We must

2  keep in mind the biases that a treating physician may bring to the disability evaluation." *Dixon v.*

3  *Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001) ("The patient's regular physician may want to do a favor

4  for a friend and client, and so the treating physician may too quickly find disability.")

5  In the ALJ's decision, the ALJ also rejected Dr. Hunt's opinion on the basis that Dr. Siebold's

6  opinion, the agreed medical examiner, was more supported by the Record.

7  > Dr. Siebold's assessment is also more supported than the assessment
>  from Dr. Hunt."  (AR 29) (citing to AR 178-185, 209-215.)

8

9  In citing to the Record, the ALJ referred to the two state agency physicians who reviewed the evidence.

10  One state agency physician opined that claimant had with the ability to lift 20 pounds occasionally and

11  10 pounds frequently, stand/sit/walk 6 hours out of 8, no limitations in pushing and pulling, no postural

12  limitations, limited in overhead reaching.  (AR 209-216.)  The other state agency physician agreed and

13  opined that claimant was capable of lifting 20 pounds occasionally and 10 pounds frequently,

14  sit/stand/walk 6 hours out of 8, no limitations in pushing or pulling, no postural limitations; limited in

15  reaching overhead with the arms.  Elsewhere, the ALJ evaluated Dr. Hunt's objective findings, "Dr.

16  Hunt's examination on November 25, 2002 [showed] normal range of motion of the neck, limited

17  forward flexion and abduction of the shoulders with negative impingement test bilaterally and no

18  instability, subluxation, disuse atrophy or neurological deficient bilaterally, and normal motor strength

19  and reflexes." (AR 29.)  *Burkhart v. Bowen*, 856 F.2d 1335, 1339 (9th Cir. 1988) (The ALJ's comment

20  was not only a permissible credibility determination given the evidence before the ALJ, it was also not

21  the only reason the ALJ gave for rejecting Dr. Harper's statements.)

22  Where the opinion of the claimant's treating physician is contradicted, and the opinion of a

23  nontreating source is based on independent clinical findings that differ from those of the treating

24  physician, the opinion of the nontreating source may itself be substantial evidence.  *Tonapetyan v.*

25  *Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (holding examining physician's opinion that claimant could

26  lift and carry 20 to 50 pounds constituted "substantial evidence" in support of ALJ's finding that claimant

27  could perform medium work, where examining physician's opinion was based on results of "his own

28  independent examination"); *Allen v. Heckler,* 749 F.2d 577, 579 (9th Cir.1984) (holding where

1   examining physician offered opinion, based on "his own neurological examination," that claimant could

2   perform sedentary work, while treating physician opined that claimant was totally disabled, ALJ's

3   finding that claimant could perform sedentary work was supported by "substantial evidence").

4          The Court offers no opinion as to whether, given a different set of facts, an ALJ's blanket reason

5   for rejecting the opinion of a worker's compensation physician would be reversible error.  The ALJ has

6   the ability, as the trier of fact, to consider the physician's possible bias.  The ability to consider bias,

7   however, is not synonymous with the ability to reject a treating physician's opinion or to discount that

8   physician's opportunity to have observed the claimant over a long period of time.

9          Here, the ALJ considered other evidence in the Record for rejecting the opinion of Dr. Hunt.  The

10  ALJ gave appropriate consideration to the opinions of other physicians and the contradictory findings

11  in Dr. Hunt's examination of claimant.

12                    **Consideration of Claimant's Testimony**

13         Claimant argues that the ALJ failed to fully and fairly review his testimony.

14         A claimant's credibility generally becomes important at the stage where the ALJ is assessing

15  residual functional capacity, because the claimant's subjective pain statements may tell of greater

16  limitations than can medical evidence alone. Social Security Ruling (SSR) 96-7p (1996); *Tonapetyan*

17  *v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001). For this reason, the ALJ may not reject the claimant's

18  statements regarding her limitations merely because they are not supported by objective evidence. *Fair*

19  *v. Bowen*, 885 F.2d 597, 602 (9th Cir.1989). To determine whether the claimant's testimony regarding

20  the severity of his symptoms is credible, the ALJ may consider, for example: (1) ordinary techniques of

21  credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements

22  concerning the symptoms, and other testimony by the claimant that appears less than candid; (2)

23  unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of

24  treatment; and (3) the claimant's daily activities. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

25  An ALJ's finding that a claimant generally lacked credibility is a permissible basis to reject excess pain

26  testimony. *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). An ALJ "may disregard

27  unsupported, self-serving statements." *Flaten v. Secretary of Health & Human Services*, 44 F.3d 1453,

28  1464 (9th Cir. 1995).  The ALJ must give specific, convincing reasons for rejecting the claimant's

subjective statements." *Tonapetyan v. Halter*, 242 F.3d at 1147, 1148.  An ALJ may consider the following factors to determine the credibility of a claimant's allegations of disabling pain:

(1)     The nature, location, onset, duration, frequency, radiation, and intensity of any pain;

(2)     Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);

(3)     Type, dosage, effectiveness, and adverse side-effects of any pain medication;

(4)     Treatment, other than medication, for relief of pain;

(5)     Functional restrictions;

(6)     Claimant's daily activities;

(7)     Unexplained, or inadequately explained, failure to seek treatment or follow up a prescribed course of treatment; and

(8)     Ordinary techniques to test a claimant's credibility.

*Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991).

In rejecting claimant's subjective complaints, the ALJ made specific findings.  First, the ALJ did not reject all of claimant's subjective complaints of pain.  The ALJ said: "I cannot find greater limits or total disability based on the claimant's subjective complaints because they are not fully credible."  (AR 29.)  The ALJ then compared the subjective complaints with the objective medical records.  The ALJ noted that his complaints were inconsistent with the objective medical evidence: "[t]he claimant's subjective complaints and alleged limitations are out of proportion to the objective findings as noted above."    The ALJ reviewed and accurately summarized claimant's testimony from the hearing: his claim that he had to lie down 2-3 times a day for 45 minutes to 2 hours each, his inability to do activities of daily living, his headaches, and limitations in reaching, pulling, carrying, etc. (AR 29.) The ALJ then summarized the inconsistent testimony and records:

> "However, there is no evidence of severe disuse muscle atrophy that would be compatible with the level of inactivity and incapacity alleged by the claimant.  He claims severe loss of strength of the hands but he demonstrated grip strength of 75/95, 75/98 and 80/90 pounds at the Agreed Medical Examination."  (AR 29.)

The ALJ reviewed the findings of the treating physician in comparison with the severity of the restrictions alleged by claimant:

14

> "The intensity and duration of his pain as well as the level of incapacity he alleges are not supported by the findings from Dr. Hunt's examination on November 25, 2002 showing normal range of motion of the neck, limited forward flexion and abduction of the shoulders with negative impingement test bilaterally and no instability, subluxation, disuse atrophy or neurological deficit bilaterally, and normal motor strength and reflexes."  (AR 29.)

While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

The ALJ also considered claimant's lack of treatment.  The ALJ noted that claimant underwent cervical surgery, the ALJ also noted that claimant had "only one follow-up visit with Dr. Hunt after the surgery.  There is no evidence of post-surgical physical therapy."  The ALJ noted that the claimant did not seek "treatment in a low cost County facility or assistance from a nonprofit organizations," in spite of claimant's testimony that he does not have any health care insurance.  (AR 30.)  The ALJ noted that more treatment could have been provided because claimant's worker's compensation case was pending and he could receive treatment from worker's compensation.  (AR 30.)  In terms of treatment, the ALJ noted that while claimant alleges disabling headaches, there is no evidence of work-up or treatment by the appropriate specialist.  (AR 30.)  The need for infrequent or conservative treatment may refute allegations of disabling pain or impairment.  *See Fair v. Bowen*, 885 F.2d 597, 603-04 (9th Cir. 1989).

Claimant argues that he tried various prescription analgesic medications, participated in physcial therapy and utilized neuromuscular stimulator and a cold therapy device to control his pain, which the ALJ did not consider. (Opening brief p.17.)

The ALJ, however, did not reject claimant's testimony due to the methods of treatment he was receiving.  The ALJ partially rejected the testimony for the lack of more aggressive treatment he was not receiving for his alleged disabling pain.

Claimant argues that the ALJ erred in not considering Social Security Ruling 82-59.  Social Security Ruling ("SSR") 82-59 provides that an individual's failure to follow prescribed treatment is justifiable if the individual is unable to afford such treatment. SSR 82-59 "delineates the circumstances in which the Commissioner can deny benefits on the basis that the claimant has failed to follow prescribed treatment." *Roberts v. Shalala*, 66 F.3d 179, 183 (9th Cir.1995), *cert. denied*, 517 U.S. 1122

1  (1996).  The ALJ did not deny plaintiff's claim based on a failure to comply with prescribed treatment.

2  The ALJ found a <u>lack</u> of treatment following surgery.[5]

3       As a last reason for discrediting the extent of claimant's disabling pain, the ALJ noted that

4  claimant has a "pending worker's compensation claim, which gives him an incentive to present himself

5  more limited and incapacitated than he actually is in order to maximize his chances of getting a worker's

6  compensation award/settlement." (AR 30.) Claimant's incentive in obtaining worker's compensation

7  benefits in an appropriate "ordinary technique of credibility" that an ALJ may consider.  An ALJ may

8  use ordinary techniques of credibility evaluation. *See Smolen*, 80 F.3d at 1284.  *See Allen v. Sec'y of*

9  *Health & Human Servs.,* 726 F.2d 1470, 1473 (9th Cir.1984) ("It is the ALJ's role to resolve evidentiary

10  conflicts. If there is more than one rational interpretation of the evidence, the ALJ's conclusion must be

11  upheld."). "Credibility determinations are the province of the ALJ." *Fair v. Bowen*, 885 F.2d at 604. The

12  Court does not find error.

13  **Develop Record/Refer for Consultative Examination**

14       Claimant makes two related arguments.  First, Claimant argues that the record is not complete

15  and the ALJ should have developed the record.  Next, claimant argues the ALJ should have referred him

16  to a consultative examiner.

17       Although the claimant bears the burden of proof where the evidence in the record is equivocal,

18  the ALJ has a duty to assist in developing the record. *Armstrong v. Commissioner of Social Security*, 160

19  F.3d 587, 589-90 (9th Cir.1998); see also *Sims v. Apfel*, 530 U.S. 103, 120 S.Ct. 2080, 2084 (2000); 20

20  C.F.R. § 404.1512(a) (instructing claimant that ALJ will consider "only impairment(s) you say you have

21  or about which we receive evidence"); *id.* §§ 404.1512(d)-(f) (detailing the ALJ's duties to develop a

22  claimant's complete medical history before making a determination of non-disability; to obtain additional

23  information if reports from claimant's medical sources contain ambiguities or are otherwise "inadequate

24  for us to determine whether you are disabled;" and to order a consultative examination if unable to seek

25  

26  [5]Ruling 82-59 delineates the circumstances in which the Secretary can deny benefits on the basis that the claimant
has failed to follow prescribed treatment. For instance, the ruling states that the claimant should be given an opportunity to

27  explain why he has failed to follow treatment, that the treating physician should be contacted to clarify the treatment the
claimant was told to follow, and that the claimant will be notified of the possibility of denial on this basis prior to her hearing.

28  The procedures that SSR 82-59 mandates, however, only apply to claimants who would otherwise be disabled within the
meaning of the Act.

clarification from medical sources or if "the information we need is not readily available from the records of your medical treatment source").  If the ALJ determines that the treating physician's records are inconclusive or otherwise inadequate to receive controlling weight, absent other medical opinion evidence based on personal examination or treatment of the claimant, the ALJ must seek clarification or additional evidence from the treating physician in accordance with 20 C.F.R. § 404.1512(e).

Claimant does not identify what records or information is missing from the Record which the ALJ should have developed. The claimant has the initial burden of proving the existence of a disability within the meaning of the Act.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).  Claimant states that "in light of complaint of residual pain and limitations" the record should be developed.  (Opening brief p. 19.)  Claimant does not argue what additional records existed for the ALJ to develop.  The evidence in the Record shows the treatment claimant received for his complaints.  The Court does not find error.

Claimant argues that a consultative examination should have been ordered.  (Opening Brief p. 19.)  20 C.F.R. § 404.1519a (a)(1) authorizes consultative examinations if a claimant's treating sources cannot or will not give sufficient medical evidence to determine disability.  A consultative examination may be obtained when:

> "A consultative examination may be purchased when the evidence as a whole, both medical and nonmedical, is not sufficient to support a decision on your claim. Other situations, including but not limited to the situations listed below, will normally require a consultative examination:
> (1) The additional evidence needed is not contained in the records of your medical sources;
> (2) The evidence that may have been available from your treating or other medical sources cannot be obtained for reasons beyond your control, such as death or noncooperation of a medical source;
> (3) Highly technical or specialized medical evidence that we need is not available from your treating or other medical sources;
> (4) A conflict, inconsistency, ambiguity or insufficiency in the evidence must be resolved, and we are unable to do so by recontacting your medical source; or
> (5) There is an indication of a change in your condition that is likely to affect your ability to work, but the current severity of your impairment is not established."  *Id.*

The regulations do not, however, require consultive evaluations of every alleged impairment. *See e.g., Moon v. Sullivan*, 923 F.2d 1175, 1183 (6th Cir. 1990) (credibility of plaintiff also a factor). It is incumbent to secure any additional evidence only as needed to make a sound determination.

1 | *Ferguson v. Schweiker*, 765 F.2d 31, 36-37, n.4 (3d Cir. 1985); *Dozier v. Heckler*, 754 F.2d 274 (8th Cir.

2 | 1985) (per curiam).

3 |     Claimant fails to substantiate the need for further information or an additional consultative

4 | examination.  Richard M. Siebold, M.D., performed an orthopedic Agreed Medical Examination in the

5 | context of claimant's workers' compensation litigation.  (AR 187-208.)  The ALJ had the benefit of the

6 | treatment notes and surgical notes of Dr. Hunt as claimant's treating orthopedic surgeon in his workers'

7 | compensation claim, which the ALJ considered.  The ALJ also had the treatment records of Gerald

8 | Alexander, M.D., surgical orthopedist, and the opinions of the state agency reviewing physicians. 20

9 | C.F.R.§§ 404.1512(e) and 416.912(e) provide additional medical information will be sought when the

10 | available evidence is "inadequate" or when the report from a "medical source contains a conflict or

11 | ambiguity."  There was no such inadequacy, conflict or ambiguity here.

12 | **Hypotheticals to the VE**

13 |     Claimant argues that the ALJ erred at Step five in accepting the VE's testimony in response to

14 | the hypotheticals.

15 |     The Ninth Circuit has held "[t]he limitation of evidence in a hypothetical question is

16 | objectionable only if the assumed facts could not be supported by the record." *Magallanes v. Bowen*,

17 | 881 F.2d at 757 (quotations omitted).  "Hypothetical questions posed to the vocational expert must set

18 | out *all* the limitations and restrictions of the particular claimant . . ." *Embrey v. Bowen*, 849 F.2d 418,

19 | 422 (9th Cir. 1988) (italics in original) (assumptions in hypothetical must be supported by the record).

20 | An ALJ may properly "limit a hypothetical to those impairments that are supported by substantial

21 | evidence in the record." *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001).  An ALJ may accept

22 | or reject restrictions in a hypothetical question and which are not supported by substantial evidence, even

23 | when there is conflicting medical evidence. *Osenbrock*, 240 F.3d at 1165; *see Magallanes*, 881 F.2d

24 | at 756-757.   In addition, the parameters of an ALJ's hypotheticals need not "include any alleged

25 | impairments that the ALJ has rejected as untrue." *Long v. Chater*, 108 F.3d 185, 188 (8th Cir. 1997).

26 |     The ALJ included in one hypothetical, the restrictions opined by Dr. Hunt, but these limitations

27 | were later rejected by the ALJ for lack of support in the Record.  Since the ALJ properly rejected Dr.

28 | Hunt's opinions regarding claimant's physical restrictions, the ALJ was not required to rely on such

18

matter in his hypotheticals to the VE or to rely on the VE's conclusion as to such limitations.  Claimant's argument implies that the ALJ should have accepted the opinion of Dr. Hunt regarding his limitations. The ALJ, however, did not accept this physician's opinion regarding his limitations.  In his decision, the ALJ rejected the opinions as to the severity of claimant's limitations on his ability to work.

Instead, the ALJ found that claimant can perform light work with no repetitive neck motion, prolonged positioning of the neck, work at or above the shoulder level of the bilateral upper extremities or ladder or pole climbing.  (AR 31, Finding no.6.)  Given these limitations in one hypothetical, the VE testified that the claimant could preform the position of product assembler and counter clerk.  (AR 295.) Here, there is substantial evidence in the record to support the hypotheticals given to the VE.

## CONCLUSION

The Court finds no error in the ALJ's analysis.  As such, the ALJ's decision is supported by substantial evidence in the Record as a whole and based on proper legal standards.  Accordingly, this Court DENIES claimant's appeal from the administrative decision of the Commissioner of Social Security.  The clerk of this Court is DIRECTED to enter judgment as a matter law in favor of defendant Jo Anne B. Barnhart, Commissioner of Social Security and against claimant Richard A. Rijos.

IT IS SO ORDERED.

**Dated:    July 26, 2006**                     **/s/ Lawrence J. O'Neill**
b9ed48                                                    UNITED STATES MAGISTRATE JUDGE

19